**STATE ex HESS v AKRON (city) et**

Ohio Appeals, 9th Dist, Summit Co

No 2589. Decided July 14, 1936

F. A. Rees, Akron, and A. J. Koval, Akron, for plaintiff.

Wade DeWoody, Director of Law, Akron, and Harold L. Mull, Asst. Dir. of Law, Akron, for defendants.

ROSS, PJ, HAMILTON and MATTHEWS, JJ, (1st Dist) sitting by designation.

**OPINION**

By MATTHEWS, J.

This is an original action in mandamus to compel the officers of the city of Akron to take the necessary proceedings to pay from unappropriated funds in the city treasury to the relator the sum of $979.07, claimed to be due him as unpaid salary for services as deputy bailiff of the Municipal Court of Akron during the years 1931, 1932, 1933 and 1934.

The case was presented upon the admissions in the pleadings and an agreed statement of facts.

In the legislative act creating the Municipal Court of Akron, the judges of that court were authorized to appoint such

deputy bailiffs as they should deem necessary to serve during the pleasure of the appointing power. (§§1579-540 and 1579-542, GC). Under this authority the relator was appointed prior to October 15, 1931, and held the position until January 31, 1934. By the terms of §1579-540, GC, the salary of deputy bailiffs was fixed at $2100, payable in monthly installments out of the treasury of the city of Akron.

The law requires the performance of the statutory duty of passing an appropriation ordinance by the city council, and the drawing of a warrant by the director of finance before money can be drawn from the treasury. The writ is sought to compel the passage of such an appropriation ordinance and the drawing of such a warrant.

It is conceded that the judges of the Municipal Court of Akron under the law included in their budget an item for salaries of deputy bailiffs; that during the period involved in this case the council of the city of Akron passed appropriation ordinances in conformity to the budgetary requests of the Municipal Court of Akron, and that the relator was paid during the period in accordance with the appropriation ordinances enacted in conformity to the court's request.

However, the amount requested, appropriated, and paid, was less than the amount of the salary of a deputy bailiff as provided by §1579-540, GC. The economic conditions during these years was the reason for the departure from the statutory standard of compensation.

It appears from the allegations of the answer of the defendants that prior to October 15, 1931, the judges of the Municipal Court of Akron took cognizance of the reduction in public revenues to such an extent that they were insufficient to meet the normal expenses of the municipal government; and they considered means of reducing the expenses of the court to meet the changed conditions. So far as the deputy bailiffs were concerned the judges had the clear right to reduce the number of deputy bailiffs and thereby effect an economy, as the deputy bailiffs held office at the pleasure of the judges. This method was not resorted to. By and with the consent of the relator the court retained the same number of deputy bailiffs, but reduced the amount of their budgetary request for deputy bailiff salaries below the statutory amount for the number of bailiffs retained by the court. By and with the consent of the relator this aggregate amount was apportioned among the deputy

bailiffs pro rata, and for more than three years the relator presented his voucher semi-monthly for his proportion and upon receiving payment receipted, in all but seven instances, a payroll sheet which expressly recited that the amount received by him was the "am't due," and in the other seven instances signed payrolls reciting above his signature "Received pay in full to date."

In the defendants' brief it is said: "The sole defense which respondent presents in opposition to the relator's application for the writ is on the question of implied waiver or waiver by estoppel."

On the facts presented, we believe the defendants were justified in ▬▬▬ ▬ refusing to act on the demand of the relator, and that the writ should be denied.

We see no essential difference between this case and that of **Phillips, Exrx. v City of Cleveland, 130 Oh St 49, 3 O.O. 88** (petition in error dismissed by Supreme Court). In that case, certain judges of the Municipal Court of Cleveland, although protected by constitutional provision against reduction of their salaries, agreed among themselves to accept a reduction. After the death of one of these judges, his executrix sued to recover the amount of the reduction. It was claimed that the agreement was without consideration, and, in any event, was void as against public policy. Discussing these contentions and the contention of the defendant that the transaction was executed and could not be disturbed, the Court of Appeals of the Eighth District said:

"It was an agreement entered into for the benefit of the city of Cleveland and its inhabitants. The city accepted this agreement and acted upon it and to some extent at least based its financial expenditures upon this agreement being carried into effect.

"The contract having been executed cannot now be repudiated.

"Discussing for a moment the proposition that this was, if anything, a gift without consideration, suffice it to say that when a thing has been given and the title to it has, by such gift, been transferred, it cannot be reclaimed by the donor.

"It is argued that this arrangement was against public policy, and in violation of **Article II, §20 of the Constitution of Ohio,** which Article provides for the fixing of terms of office, and the compensation of officers, but provides that no change there-

in shall affect the salary of any officer during his existing term unless such office be abolished.

"It is conceded that neither Judge Phillips nor any other judge could have been compelled to accept during his term of office a compensation less than that fixed at the time he entered upon his term, but it does not follow that he could not voluntarily relinquish a part of it. We fail to see how such an arrangement is parallel to a pre-election promise to accept less than the authorized compensation, because the ulterior motive of such a promise is readily understood. Here the agreement to accept less than the statutory compensation was not only not against public policy but was commendable and patriotic."

Cleveland v Phillips, 19 Abs 71, at p. 72.

We concur in this reasoning and believe it applies with greater force to an officer holding his office at the will of the appointing power and not for a definite term. A person who enters into and executes a transaction voluntarily with full knowledge of all the facts has no cause of action based on the attempted rescission or repudiation of the understanding of the parties to the transaction. The transaction having been carried to fulfillment there is no chose in action upon which to predicate an action. That principle bars this action.

It should be said here that the transaction here under consideration has all the elements of an executed contract. There was consideration to support the agreement among the deputy bailiffs to perform the services for the benefit of the city of Akron. Their mutual promises constituted consideration. Furthermore, if there had been no consideration originally, the change of position by the city of Akron in reliance upon the promise would supply the consideration. In 1 Restatement of the Law of Contracts, §90, page 110, it is said:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

And we see no principle of public policy violated by enforcing this agreement. While it is true that the statute fixes the annual salary, it at the same time expressly provides that there should be no definite term of office. Instead of manifesting an intent to place deputy bailiffs in a position of independence. the contrary intent is shown by the express provision that they should hold office during the pleasure of the judges. The nature of their duties requires that they be subject to the direction of the court, and the law so provides. So that so long as the deputy bailiff continued to hold his office, he was required to abide by the terms of his appointment.

But regardless of whether there was a binding contract, when it was fully performed no cause of action existed in favor of anyone. Many unenforceable agreements are voluntarily performed. The law does not disturb the status quo thus created.

Furthermore, on familiar principles of waiver the relator is barred from asserting a right to the full statutory compensation because of his conduct in leading the appointing power to believe that he would not assert such a claim. He did this when the matter was originally presented and repeated the waiver every time he signed a payroll receipt. 40 O. Jur., 1233, et seq.; 27 R.C.L. 906.

The relator in support of his claim that public officers cannot legally contract to increase or diminish their statutory compensation quotes from 32 O. Jur., 1030, et seq. The correctness of that general statement may be conceded. It is only stated as a general rule. No statement is made that an officer so agreeing may recover after he has accepted the reduced salary. Indeed the only two cases cited to support the general statement of the text decide against the officers, notwithstanding the statement of the general principle—and for obvious reasons. In Prentiss v Dittmer, 93 Oh St 314, it appeared that a candidate for office offered to forego a part of compensation as an inducement to secure votes, which was clearly a violation of the Corrupt Practice Act. Manifestly this case has no application to the case at bar. In Stoker v Henne, 8 N.P. 514, a clerk of courts as an inducement to the filing of an action agreed to make his fees contingent upon the plaintiff recovering in the action. After the plaintiff had failed to recover in the action the clerk sought to repudiate the agreement and recover his costs. The court decided against him, saying, at page 516: "I think the rule is, that if the plaintiff intended to rely upon his statutory fees and upon the result of the judgment, it was his business to renounce the contract

and rescind the same before the guardian had incurred the liability."

The only other case relied on is that of **Lehman v City of Toledo, 48 Oh Ap 121, (16 Abs 578).** As we understand the case it decides contrary to the contention of the relator. At page 125 the court says: "The city, by its ordinance, could not require the donation to it by employees of any part of their wages or salaries, but when all of them severally agree to a uniform deduction, and, thereafter, without protest, receive and accept their respective salaries on the basis of their agreement, * * * they can not now in law complain of that which each must be held to have voluntarily done."

For these reasons, we conclude that the relator has not shown a cause of action for the issuance of the writ of mandamus.

The writ is therefore denied and judgment for the costs rendered in favor of the defendants.

ROSS, PJ, and HAMILTON, J, concur.